UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYLE DWAYNE WHITE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>　　　　Defendant. | Case No. CV 10-8048-SP<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**INTRODUCTION**

On November 1, 2010, plaintiff Lyle Dwayne White filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of Supplemental Security Income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties' briefing is now complete, and the court deems the matter suitable for adjudication without oral argument.

Three disputed issues are presented for decision here: (1) whether the Appeals Council properly determined that plaintiff is capable of performing his past

relevant work; (2) whether the Appeals Council applied the correct exertional category in light of the severe erosion of the light occupational base; (3) whether the Appeals Council properly evaluated plaintiff's disability under the listing set forth in the Social Security regulations. Joint Stipulation ("JS") at 3-8, 8-13, 13-15, 15-19, 19-23, 23-28, 28-32, 32-34, 34-35.

Having carefully studied, inter alia, the parties' Joint Stipulation and the Administrative Record ("AR"), the court concludes that, as detailed herein, the Appeals Council erred at step four by finding plaintiff capable of performing his past relevant work as he actually performed it. But such error was harmless in light of the Appeals Council's alternative finding that plaintiff could perform other work that exists in significant numbers in the local and national economy. Therefore, the court affirms the Commissioner's decision denying benefits.

## II.

## BACKGROUND

A.  Factual Background

Plaintiff, who was 50 years old on the date of his January 16, 2008 administrative hearing, has a general equivalency diploma. *See* AR at 60, 95.

On March 27, 2006, plaintiff filed an application for SSI, alleging that he has been disabled since December 31, 2001 due to: diabetes; mental disability; pain in knees, thighs, feet, and neck; seizures; depression; and hearing voices. *See* AR at 181-84, 199. Plaintiff's application was denied initially, after which he filed a request for a hearing. *Id.* at 99, 101-05, 106.

On January 16, 2008, plaintiff, represented by counsel, appeared and testified at a hearing before the Administrative Law Judge ("ALJ"). AR at 60, 64-66, 82-91, 93, 95. The ALJ also heard testimony from Lowell Sparks, M.D., a medical expert ("ME"), David Peterson, Ph.D., an ME, and Sandra Trost, a vocational expert ("VE"). *Id.* at 63-73, 73-80, 81, 91-98.

///

B.     The ALJ's Decision

On April 16, 2008, the ALJ denied plaintiff's request for benefits. AR at 39-50. Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since the date of his SSI application. *Id.* at 42.

At step two, the ALJ found that plaintiff suffers from severe impairments consisting of "insulin-dependent diabetes mellitus, history of diabetic foot infections of the left foot, septic arthritis of the left ankle, diabetic neuropathy, major depressive disorder, and substance addiction disorder in remission." AR at 42 (emphasis omitted).

At step three, the ALJ determined that the evidence does not demonstrate that plaintiff's impairments, either individually or in combination, meet or medically equal the severity of any listing set forth in the Social Security regulations ("Listing"). AR at 43; *see* 20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ then assessed plaintiff's residual functional capacity ("RFC")[1] and determined that:

1.     From the period prior to November 2004, plaintiff could perform the full range of work activity at all exertional levels. The ALJ further found that plaintiff was able to: "perform simple routine tasks and make simple judgments and decisions"; "occasionally perform detailed or complex tasks and make detailed or complex decisions"; but plaintiff "should avoid unprotected heights, moving machinery, and dangerous machinery." AR at 44 (emphasis omitted).

---

[1] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1        2.      From November 2004 to March 2007, the ALJ found that plaintiff was able to: "lift or carry 20 pounds occasionally, 10 pounds frequently, stand or walk for 4 hours in an eight-hour workday, sit for 6 hours in an eight-hour workday, and stand or walk continuously for 2 hours without a break"; "alternate between sitting and standing every 2 hours"; "frequently bend and stoop and occasionally climb stairs, balance, kneel, crouch, and crawl"; "perform simple tasks, make simple judgments and decisions, and occasionally perform detailed or complex tasks and make detailed or complex decisions"; but was "unable to walk on uneven terrain, work in extremely cold temperatures, or climb ladders, ropes or scaffolds." AR at 45 (emphasis omitted).

        3.      From March 2007 to the date of the decision, the ALJ found that plaintiff is able to: "lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for two hours in an eight-hour workday, sit for six hours in an eight-hour workday, stand or walk continuously for one hour without a break, and perform work that allowed [plaintiff] to alternate between sitting and standing every hour"; "on an occasional basis, . . . climb stairs, balance, kneel, crouch, crawl, bend and stoop"; "perform simple tasks and make simple judgments and decisions"; "on an occasional basis, . . . perform detailed or complex tasks and make detailed or complex decisions"; but plaintiff is "unable to walk on uneven terrain or climb ladders, ropes, or scaffolds, or work at heights or under other hazardous conditions." AR at 47 (emphasis omitted).

        The ALJ found, at step four, that plaintiff is able to perform past relevant work. AR at 49. Specifically, the ALJ found that prior to November 2004, plaintiff was capable of performing past relevant work as a surveillance systems monitor, stock clerk, and home attendant, as these jobs are generally performed. *Id*. From November 2004 to March 2007, the ALJ found that plaintiff was capable of performing past relevant work as a surveillance systems monitor and home attendant, as these jobs are generally performed. *Id*. From March 2007 to the date

of the decision, the ALJ found that plaintiff is capable of performing past relevant work as a surveillance systems monitor, as that job is generally performed. *Id.* Thus, the ALJ concluded that plaintiff was not suffering from a disability as defined by the Social Security Act. *Id.* at 40, 49-50.

Plaintiff filed a timely request for review of the ALJ's decision, which was granted by the Appeals Council. AR at 35.

C.   The Appeals Council's Decision

The Appeals Council modified the ALJ's decision but ultimately affirmed his determination that plaintiff was not disabled. AR at 6-8, 12. Specifically, the Appeals Council agreed with the ALJ's findings at steps one, two, and three of the sequential evaluation but disagreed with the ALJ's finding at step four and modified the ALJ's finding at step four to "eliminate the jobs of homecare aide and stock clerk." *Id.* at 6. The Appeals Council found that the surveillance systems monitor job was the only job that met the criteria to be considered past relevant work. *Id.* The Appeals Council further found that plaintiff "is able to perform his past relevant work as a 'surveillance systems monitor' as he had performed it." *Id.* at 8.

The Appeals Council also made an alternative finding, at step five, that based on plaintiff's vocational factors and RFC, plaintiff "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy" – i.e., Cashier II (Dictionary of Occupational Titles ("DOT") No. 211.462-010) and Bench Assembler (DOT No. 706.684-022). AR at 9, 11.

The decision of the Appeals Council, issued on September 8, 2010, stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by

substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). But if the court determines that the ALJ's or Appeals Council's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the Appeals Council's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from" the Appeals Council's conclusion. *Mayes*, 276 F.3d at 459. The Commissioner's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the Commissioner's decision, the reviewing court "'may not substitute its judgment for that of the ALJ'" (*id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992))), or for that of the Appeals Council.

## IV.

## DISCUSSION

### A. The Appeals Council Committed Harmless Error at Step Four

Plaintiff argues that the Appeals Council erred in determining that he could perform his past relevant work as a surveillance system monitor. JS at 3. Plaintiff also argues the Appeals Council improperly classified plaintiff's past relevant work as surveillance system monitor (DOT No. 379.367-010) instead of gate guard (DOT

6

1 | No. 372.667-030). *Id.* at 5-7.

### 1. The Appeals Council Properly Classified Plaintiff's Past Relevant Work As Surveillance System Monitor

Past relevant work is considered work that a claimant performed within the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 416.965(a). A claimant is typically the primary source for determining what past jobs the claimant has performed, as well as how those jobs were actually performed. *See* Social Security Ruling ("SSR")[2] 82-62, at *3 ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands and nonexertional demands of such work."). ALJs also rely on testimony from vocational experts as a source of occupational evidence. *Massachi*, 486 F.3d at 1152-53 (citing SSR 00-4p, at *2). "Although evidence provided by a [VE] generally should be consistent with the [DOT], [n]either the [DOT] nor the [VE] . . . evidence automatically trumps when there is a conflict." *Id.* (internal quotation marks and footnote omitted). Thus, the ALJ must first determine whether a conflict exists. *Id.* If there is a conflict, the ALJ must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id.* Here, the Appeals Council did not err by classifying plaintiff's past relevant work as surveillance system monitor.

Substantial evidence supports the Appeals Council's finding that plaintiff was

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

a surveillance system monitor as that occupation is defined in the DOT.  *See* DOT No. 379.367-010.  At the hearing before the ALJ, plaintiff testified that he was working at Santa Fe Springs Copper and Brass Company as a security guard.  AR at 88.  Plaintiff stated that he worked four days a week "[a]bout 12 hours a day."  *Id.* 88-89.  When asked about his duties as a security guard, plaintiff stated that he "s[a]t at a desk and the people [would] come and sign in and sign out."  *Id.* at 89.  In plaintiff's Work History Report, plaintiff similarly indicated that he mainly "sat at [a] desk [and] signed visitors in and out."  *Id.* at 230.  The job involved zero hours of walking or standing and involved mainly writing, typing or handling small objects.  *Id.*

      The VE also testified – after reviewing plaintiff's vocational history, hearing his testimony, and further questioning him regarding his past work experience – that although plaintiff's past work "is listed as a security guard," his past work more closely resembles "a surveillance systems monitor as he indicated he just sat at a desk."  AR at 92, 93.  Clearly there was a conflict between the VE's testimony and the DOT's description of the duties of a surveillance system monitor.  *See* DOT No. 379.367-010 (job involves monitoring premises using closed circuit television monitors).  But the ALJ addressed the conflict and obtained reasons therefor.  *See Massachi*, 486 F.3d at 1152-53.  The VE stated that the surveillance system monitor job does not necessarily require a computer monitor and may involve just sitting at a desk.  AR at 93; *see* SSR 00-4p, at *3 ("A VE . . . may be able to provide more specific information about jobs or occupations than the DOT.").  Thus, it was reasonable for the Appeals Council to classify plaintiff's past relevant work as surveillance system monitor.

      2.    <u>The Appeals Council Erred in Finding Plaintiff Capable of Performing Past Relevant Work</u>

      "At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as

generally performed in the national economy.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ must make specific findings as to: (1) "the claimant's residual functional capacity"; (2) "the physical and mental demands of the past relevant work"; and (3) "the relation of the residual functional capacity to the past work." *Id.* at 845; SSR 82-62. But the ALJ is not required to make "explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed." *Pinto*, 249 F.3d at 845.

Here, as noted above, the Appeals Council adopted the ALJ's assessment of plaintiff's RFC and found that plaintiff could perform light exertional level work with various limitations. AR at 10. The Appeals Council then modified the ALJ's decision and proceeded to find that plaintiff "is able to perform his past relevant work as a 'surveillance systems monitor' as he had performed it."[3] *Id.* at 8. But plaintiff's past work, as he performed it, involved sitting for twelve hours per day (*id.* at 89, 230), and plaintiff's assessed RFC limited him to "sit[ting] 6 hours in an 8-hour workday." *Id.* at 10. Thus, the Appeals Council erroneously found plaintiff

---

[3] Although defendant contends that the Appeals Council's modification of the ALJ's decision to find plaintiff capable of performing his past work as a surveillance systems monitor "as he had performed it" was an "obvious" typographical error, the court disagrees. Certainly, the Appeals Council first indicated it was modifying the ALJ's step four finding only to eliminate the jobs other than surveillance systems monitor, thus suggesting it was finding plaintiff capable of performing that job as "generally performed," as the ALJ found. *See* AR at 6. But the Appeals Council went on to discuss plaintiff's testimony regarding how he performed that job, prior to concluding plaintiff is capable of performing that job "as he had performed it." *Id.* at 8. The record is undoubtedly ambiguous, but given this ambiguity, this court takes the Appeals Council's finding at face value.

9

capable of working as a surveillance system monitor as he had performed it.

Such error, however, was harmless, given the Appeals Council's alternative finding at step five. *See Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006) (An ALJ's error is harmless where such error is inconsequential to the ultimate non-disability determination.); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of administrative decisions regarding disability). An ALJ's erroneous step four determination is harmless error if "the ALJ properly concluded as an alternative at step five that [the claimant] could perform work in the national and regional economies." *Tommasetti v. Astrue*, 533 F.3d 1035, 1044 (9th Cir. 2008); *see also Cadena v. Astrue*, 365 Fed. App'x 777, 780 (9th Cir. 2010) (citable for its persuasive value per Ninth Circuit Rule 36-3) (holding that the ALJ's alternative ruling at step five that the claimant could perform light, unskilled work that existed in significant numbers in the national economy rendered the ALJ's step four error harmless). As discussed in further detail below, the Appeals Council here properly determined at step five that plaintiff could perform other work in the national and regional economies. *See infra* Part IV.B.

B. The Appeals Council Did Not Err at Step Five

Plaintiff next contends that the Appeals Council erred "in failing to consider the sedentary exertional category in light of the significant erosion of the light occupational base." JS at 15 (emphasis omitted). In essence, plaintiff argues that had he been confined to sedentary work, the Medical-Vocational Guidelines (the "grids"),[4] 20 C.F.R. pt. 404, subpt. P, app. 2, would have dictated a finding of

---

[4] The grids present, in table form, a shorthand method for determining the availability and number of suitable jobs for a claimant. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids categorize jobs by three physical exertional levels, consisting of sedentary, light, and medium work. *Id.* These exertional levels

"disabled" under Rule 201.14.[5/] JS at 17-18. Plaintiff's contention lacks merit.

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). There are two ways for the Commissioner to meet this burden: (a) by the testimony of a VE; or (b) by reference to the grids. *Tackett*, 180 F.3d at 1100-01 (citations omitted). But the Commissioner may rely on the grids alone "only when the grids accurately and completely describe the claimant's abilities and limitations." *Id.* at 1102 (internal quotation marks and citations omitted). When a claimant's RFC does not coincide exactly with the "full range" of work in one of the grids' three exertional levels, the Commissioner may not rely solely on the grids and must obtain the testimony of a VE. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

The gravamen of plaintiff's argument is that because he was assessed as having an RFC of "reduced range of light exertion," Social Security Administration Program Operations Manual System ("POMS") DI 25001.001 ¶B.71 "directs the Appeals Council not to use light grid rule as a framework for the decision but instead the sedentary grid rule." JS at 17. Plaintiff therefore contends that "the Appeals Council should have used grid rule 201.14" and found plaintiff disabled. *Id.* at 17-18.

---

are further divided by the claimant's age, education, and work experience. *Id.* The grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in the appropriate exertional category. *Id.* A claimant must be able to perform the full range of jobs in an exertional category for the grids to apply. *Id.*

[5/] According to Rule 201.14, a person limited to sedentary work as a result of severe medically determinable impairment(s) who is closely approaching an advanced age, is a high school graduate or more, and whose previous work experience is skilled or semiskilled (skills not transferrable), is presumptively disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 201.14.

Contrary to plaintiff's contention, however, POMS does not impose judicially enforceable duties upon the Appeals Council. *See Hermes v. Sec'y of Health & Human Servs.*, 926 F.2d 789, 791 n.1 (9th Cir. 1991) (POMS is an internal Social Security Administration manual, for the use of Social Security Administration employees, and has no "force and effect of law"; however, "[i]t is, nevertheless, persuasive" authority.). Moreover, even if POMS had the force and effect of law, POMS DI 25001.001 ¶B.71 does not mandate the Appeals Council to use a lower exertional rule level. Instead, it merely suggests using a lower exertional rule as a framework if there is a "considerable reduction in the available occupations at a particular exertional level." *See* POMS DI 25001.001 ¶B.71.

The real issue is whether the Appeals Council was justified in accepting the testimony of the VE, and relying on it as the basis for its conclusion that there were jobs in the economy that plaintiff could perform. Both parties agree, and the court finds, that plaintiff's RFC does not coincide exactly with the full range of light or sedentary work.[6] As a result, reliance solely on the grids was not permitted and the Appeals Council rightfully relied on the testimony of the VE. *See Widmark*, 454 F.3d at 1070.

During the hearing before the ALJ, based on plaintiff's limitations, the VE testified about two alternative occupations at the light exertional level that plaintiff could perform: (1) Cashier II (DOT No. 211.462-010) with 44,594 local positions and 1,683,600 national positions; and (2) Bench Assembler (DOT No. 706.684-022)

---

[6] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. *See* 20 C.F.R. § 416.967(b). A job in this category also requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. *See* 20 C.F.R. § 416.967(a). Jobs are sedentary if walking and standing are required occasionally. *Id.*

with 30,199 local positions and 489,934 national positions. AR at 96-97. Plaintiff argues that the reasoning level requirement of the Cashier II position is inconsistent with plaintiff's mental RFC limitations. JS at 18. The court agrees that a level three reasoning development score would be inconsistent with an individual limited to simple tasks and making simple judgments and decisions.[7] But the Appeals Council also found plaintiff could "occasionally perform detailed or complex tasks and make detailed or complex decisions." AR at 10. It is not clear from the record how this additional aspect to plaintiff's mental RFC would affect plaintiff's ability to perform work requiring a level three reasoning.

    In any event, even if the Cashier II job is excluded, the remaining 30,199 local and 489,934 national Bench Assembler positions are still within the parameters of "significant numbers." *See Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (citing approvingly decisions that have found several hundred jobs "significant"); 20 C.F.R. § 416.966(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements [that the claimant is] able to meet with [his] physical or mental abilities and vocational qualifications."). The Commissioner's burden, at step five, is only to show "that the claimant can perform some other work that exists in significant numbers in the national economy." *Lockwood v. Comm'r*, 616 F.3d 1068, 1071 (9th Cir. 2010), *cert. denied*, __U.S.__, 131 S. Ct. 2882, 179 L. Ed. 2d 1189 (2011).

    Accordingly, the Appeals Council met its burden and properly concluded that plaintiff retains the ability to perform other gainful activity that exists in significant numbers in the national economy.

---

[7] A level three reasoning development score assumes a person can "[a]pply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." *See* DOT, app. C.

13

      C.    <u>The Appeals Council Properly Determined that Plaintiff's Impairments Do Not Equal Listing 1.02A</u>

Plaintiff concedes that his impairments do not meet the listing at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02(A), but instead argues that the Appeals Council erred in its step three determination by concluding plaintiff's condition was not medically equivalent to Listing 1.02(A). JS at 30. Specifically, plaintiff argues that the Appeals Council's "own finding that [plaintiff] is precluded from walking on uneven terrain should have resulted in a finding of disability under Listing 1.02A." *Id.* at 28 (emphasis omitted).

Social Security regulations provide that a claimant is disabled if he or she meets or medically equals a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("listings"). 20 C.F.R. §§ 416.920(a)(4)(iii) ("If you have an impairment that meets or equals one of the listings . . . we will find that you are disabled"), 416.920(d) ("If you have an impairment(s) which . . . is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience"). In other words, if a claimant meets or equals a listing, he or she will be found disabled at this step "without further inquiry." *Tackett*, 180 F.3d at 1099. In such case, there is no need for the ALJ to complete steps four and five of the sequential process. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

To establish that an impairment is medically equivalent to a listed impairment, it is the claimant's burden to show that his impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). For an impairment or combination of impairments to equal a listing, the claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990), *superseded by statute on other grounds*, 42 U.S.C. § 1382c(a)(3)(C)(i); *see* 20 C.F.R. § 416.926(a)-(b); SSR 83-19 (an

14

impairment is "equivalent" to a listing only if a claimant's symptoms, signs, and laboratory findings are "at least equivalent in severity" to the criteria for the listed impairment most like the claimant's impairment). A determination of medical equivalence must rest on objective medical evidence. *See Lewis*, 236 F.3d at 514 ("A finding of equivalence must be based on medical evidence only" (citation omitted)). "If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the Commissioner] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing." 20 C.F.R. § 416.926(b)(2). Here, plaintiff has failed to demonstrate that the medical evidence does not show plaintiff's impairment is equivalent in severity to all the criteria of Listing 1.02(A).

In order to be considered presumptively disabled under Listing 1.02(A), a claimant must demonstrate that (1) he has major dysfunction of a major peripheral weight-bearing joint (i.e., hip, knee, or ankle) characterized by gross anatomical deformity and chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the affected joint; (2) medical imaging reflects narrowing, destruction, or ankylosis of the affected joint; and (3) the dysfunction results in an "inability to ambulate effectively, as defined in 1.00B2b."[8] 20 C.F.R. pt. 404,

---

[8] Section 1.00(B)(2)(b) of the listings states the following:
(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a

1 subpt. P, app. 1, § 1.02(A); *see Hamilton v. Astrue*, 2010 WL 3748744, at *5 (C.D. Cal. Sept. 22, 2010).

While the Appeals Council found that plaintiff is "precluded from walking on uneven terrain" (AR at 10), plaintiff admits that he "lacks the requisite anatomical findings" to meet the other criteria set forth in Listing 1.02(A). JS at 30. According to plaintiff, he "equals Listing 1.02A based on his inability to ambulate effectively alone." *Id.* But "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531 (citing 20 C.F.R. § 416.926(a)); *see also Lewis*, 236 F.3d at 514 (a claimant cannot circumvent the requirements of a given listing by urging that his impairments "equal," rather than meet, its criteria). Plaintiff presents no persuasive legal authority that supports his suggestion that a claimant may be found presumptively disabled under the listings based solely on an alleged inability to ambulate effectively.

Plaintiff has therefore not met his burden to demonstrate that his symptoms equaled all of the criteria of Listing 1.02(A). Accordingly, the Appeals Council did not err at step three in finding that plaintiff's impairment does not equal Listing 1.02(A).

/ / /
/ / /
/ / /

---

walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b).

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

Dated: November 16, 2011

_____
HON. SHERI PYM
UNITED STATES MAGISTRATE JUDGE